

**Aaron Saykin**
Attorney
Direct Dial: 716.848.1345
Direct Facsimile: 716.961.7933
ASaykin@hodgsonruss.com

November 15, 2021

**Via CM/ECF and Email**

Hon. Geoffrey W. Crawford
Chief United States District Judge - Vermont
P.O. Box 478
Rutland, VT 05702-0478
(802) 773-2205
Email to: Jo_LaMarche@vtd.uscourts.gov

Dear Judge Crawford:

      Re:   *Alle-Catt Wind Energy LLC v. Town of Farmersville, New York et al.*
              Case No.:  1:20-cv-1785

      We represent Plaintiffs Alle-Catt Wind Energy LLC ("ACWE") and Schwab Dairy Farm Property, LLC a/k/a Schwab Dairy Farm (collectively, "Plaintiffs").

      Pursuant to the Court's June 25, 2021 Order (Dkt. 24), this letter is to advise the Court that the Appellate Division, Fourth Department has ruled in a related matter involving New York State's approval of ACWE's wind project (the "Project"), in *Town of Farmersville v. New York State Board on Electric Generation Siting and the Environment*, Docket No. OP 20-01406 (4th Dept., Nov. 12, 2021).  A copy of the Appellate Division's decision, which is accompanied by a more detailed companion decision, is appended to this letter as **Exhibit A**.  The parties agreed to wait for this decision before the Court decides Defendants' motion to dismiss.  *See* Dkt. 24 at *1-2.  This decision now impacts one or more of Defendants' defenses.

      As the Court is aware, Plaintiffs have taken the position that they have a vested right in a permit for a meteorological wind tower (a "MET Tower") located in the Town of Farmersville (the "Town").  Plaintiffs also argued that the MET Tower is subject to the exclusive jurisdiction of the New York State Board on Electric Generation Siting and the Environment (the "Siting Board"), meaning the Defendants lacked jurisdiction to terminate the permit in October 2020.  *See* Compl., Dkt. 1 ¶¶ 41-49, 84-110.  In response, Defendants argued that they were suing (at the Appellate Division) to vacate the Siting Board's determination and to require the Siting Board to impose the requirements of one of the Town's new local laws governing wind turbine projects.  *See* Dkt. 19 at *5-6.  They further argued that this Court could not determine whether Plaintiffs have a vested right in the MET Tower permit until the Appellate Division decided the Siting Board lawsuit.  *See id.* at *6.

November 15, 2021
Page 2

   The Appellate Division's decision affirms the Siting Board's approval of the Project. It also confirms that the Town had no jurisdiction to terminate the MET Tower permit, which was part of ACWE's Project that was before the Siting Board.

   Plaintiffs maintain that, at the time of the Town's October 2020 "termination" of the MET Tower permit, they had a vested right in the permits for its construction and continued operation. The Town granted the permit in late 2016. During ACWE's Project application process, jurisdiction over the MET Tower lodged exclusively with the Siting Board. The Siting Board provided Plaintiffs with further vested rights when it approved ACWE's Project—which includes the MET Tower—in June of 2020, thereby permitting the tower's continued use. Plaintiffs' construction, continued maintenance, rent payments, and operation of the MET Tower confirm that they had a vested right at the time of the October 2020 "termination."

          Respectfully submitted,

          Aaron M. Saykin

AMS/say
Enclosure
cc: R. Anthony Rupp, III, Esq.

# EXHIBIT A

# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**686**
**OP 20-01406**
PRESENT: WHALEN, P.J., SMITH, LINDLEY, TROUTMAN, AND WINSLOW, JJ.

---

IN THE MATTER OF TOWN OF FARMERSVILLE,
PETITIONER,

V                                                                    MEMORANDUM AND ORDER

NEW YORK STATE BOARD ON ELECTRIC GENERATION
SITING AND THE ENVIRONMENT, ALLE-CATT WIND
ENERGY, LLC, STATE OF NEW YORK, JOHN DOE
CORPORATIONS AND JOHN DOES, RESPONDENTS.
(PROCEEDING NO. 2.)

---

THE ZOGHLIN GROUP, PLLC, ROCHESTER (BENJAMIN E. WISNIEWSKI OF COUNSEL), FOR PETITIONER.

ROBERT A. ROSENTHAL, GENERAL COUNSEL, ALBANY (JOHN C. GRAHAM OF COUNSEL), FOR RESPONDENT NEW YORK STATE BOARD ON ELECTRIC GENERATION SITING AND THE ENVIRONMENT.

THE DAX LAW FIRM, P.C., ALBANY (JOHN W. DAX OF COUNSEL), FOR RESPONDENT ALLE-CATT WIND ENERGY, LLC.

---

Proceeding pursuant to Public Service Law § 170 (1) (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul a determination granting a Certificate of Environmental Compatibility and Public Need, and for other relief.

It is hereby ORDERED that the determination is unanimously confirmed without costs and the petition is dismissed.

Same memorandum as in *Matter of Coalition of Concerned Citizens v New York State Bd. on Elec. Generation Siting & Envt.* ([proceeding No. 1] — AD3d — [Nov. 12, 2021] [4th Dept 2021]).

Entered: November 12, 2021                                   Ann Dillon Flynn
                                                             Clerk of the Court

# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

```
681
OP 20-01405
PRESENT: WHALEN, P.J., SMITH, LINDLEY, TROUTMAN, AND WINSLOW, JJ.
```

IN THE MATTER OF COALITION OF CONCERNED
CITIZENS AND DENNIS GAFFIN, AS ITS PRESIDENT,
PETITIONERS,

V                                    MEMORANDUM AND ORDER

NEW YORK STATE BOARD ON ELECTRIC GENERATION
SITING AND THE ENVIRONMENT AND ALLE-CATT
WIND ENERGY, LLC, RESPONDENTS.
(PROCEEDING NO. 1.)

LAW OFFICE OF GARY A. ABRAHAM, GREAT VALLEY (GARY A. ABRAHAM OF COUNSEL), FOR PETITIONERS.

ROBERT A. ROSENTHAL, GENERAL COUNSEL, ALBANY (JOHN C. GRAHAM OF COUNSEL), FOR RESPONDENT NEW YORK STATE BOARD ON ELECTRIC GENERATION SITING AND THE ENVIRONMENT.

THE DAX LAW FIRM, P.C., ALBANY (JOHN W. DAX OF COUNSEL), FOR RESPONDENT ALLE-CATT WIND ENERGY, LLC.

---

Proceeding pursuant to Public Service Law § 170 (1) (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul a determination granting a Certificate of Environmental Compatibility and Public Need, and for other relief.

It is hereby ORDERED that the determination is unanimously confirmed without costs and the petition is dismissed.

Memorandum: Alle-Catt Wind Energy, LLC (Alle-Catt), a respondent in both of these proceedings, submitted a proposal to the New York State Board on Electric Generation Siting and the Environment (Board), also a respondent in both proceedings, seeking approval of a project involving the construction of a wind-powered electric generating facility consisting of numerous wind turbines in several Western New York counties. In response to the proposal, the Board issued a "Certificate of Environmental Compatibility and Public Need" (Certificate) that permitted the project to go forward. The Coalition of Concerned Citizens (Coalition) and Dennis Gaffin, as its president (collectively, Coalition petitioners), commenced the first of these two CPLR article 78 proceedings (proceeding No. 1), initiated in this Court pursuant to Public Service Law § 170 (1), seeking to annul the Board's determination to grant the Certificate. The Town of Farmersville (Farmersville) commenced the second CPLR article 78

proceeding (proceeding No. 2), also initiated in this Court pursuant to Public Service Law § 170 (1), seeking to annul the same determination.  We confirm the determination, and therefore we dismiss both petitions.

In proceeding No. 1, the Coalition petitioners contend that the Board exceeded its authority by applying Town of Freedom (Freedom) Local Law No. 1 of 2019 (Freedom's 2019 Law), because Supreme Court had determined in a separate proceeding and action that Freedom Local Law No. 3 of 2007 (Freedom's 2007 Law) was in effect at the time of the proceedings before the Board.  We reject that contention.

As the Board correctly noted concerning that issue, "[t]he situation is complicated" (*Application of Alle-Catt Wind Energy LLC*, 2020 WL 3036287, *45, 2020 NY PUC LEXIS 653, *100 [NY St Bd on Elec Generation Siting & Envt, Case 17-F-0282, June 3, 2020]).  Before this project began, Freedom's 2007 Law governed applications for wind energy projects such as this one within that town.  While the project was in its infancy, the Freedom Town Board enacted Local Law No. 1 of 2018 (Freedom's 2018 Law), which changed several provisions related to wind energy projects, including the maximum height permitted for wind turbines and the required setbacks from residences, churches and other facilities.  Freedom's 2018 Law was challenged in a hybrid CPLR article 78 proceeding and declaratory judgment action (separate action) in which Supreme Court eventually annulled that local law and declared that Freedom's 2007 Law remained in effect (*Matter of Freedom United v Town of Freedom Town Bd.*, Sup Ct, Cattaraugus County, Oct. 25, 2019, Parker, A.J., index No. 87572/2019, *appeal dismissed* 2020 NY Slip Op 61184[U] [4th Dept 2020]).  While that litigation was pending, however, the Freedom Town Board enacted Freedom's 2019 Law, which the parties agree concerns the same subjects as Freedom's 2018 Law.  Consequently, inasmuch as Freedom's 2018 Law had been superseded by Freedom's 2019 Law, the litigation in the separate action was rendered moot (*see generally Lasky v Town Bd. of Town of Amherst*, 57 AD3d 1392, 1392-1393 [4th Dept 2008]; *Matter of Group for S. Fork v Town Bd. of Town of Southampton*, 285 AD2d 506, 508 [2d Dept 2001]).  Because the Freedom Town Board enacted Freedom's 2019 Law and it was not at issue in the separate action, that was the operative local law for purposes of the proceedings before the Board, and the Board was required to apply it (*see* Public Service Law § 168 [3] [e]), regardless of Supreme Court's declaration in the separate action.

Also in proceeding No. 1, the Coalition petitioners contend that the Board gave insufficient weight to the character of the community, that the Board failed to balance the severe adverse impact on that character against the project's modest and theoretical benefits, and that the Board's determination that the project would have beneficial effects on the climate was impermissibly based on speculation.  We reject those contentions.

Pursuant to its enabling statute, the Board must determine, inter alia, whether a proposed electric generating facility "is a beneficial addition to or substitution for the electric generation capacity of the state" and whether "the adverse environmental effects of the

construction and operation of the facility will be minimized or avoided to the maximum extent practicable" (Public Service Law § 168 [3] [a], [c]), and the Board must consider, inter alia, "the impact on community character" and any additional "social, economic, visual or other aesthetic, environmental and other conditions" deemed pertinent by the Board (§ 168 [4] [f], [g]).  "[T]he Board was created to provide for an expeditious review process and 'to balance, in a single proceeding, the people's need for electricity and their environmental concerns' " (*Matter of TransGas Energy Sys., LLC v New York State Bd. on Elec. Generation Siting & Envt.*, 65 AD3d 1247, 1252 [2d Dept 2009], *lv denied* 13 NY3d 715 [2010]; *see generally Matter of Citizens for Hudson Val. v New York State Bd. on Elec. Generation Siting & Envt.*, 281 AD2d 89, 92 [3d Dept 2001]).  Furthermore, it is settled that "[t]his [C]ourt's scope of review is limited to whether the decision and opinion of the [B]oard, *inter alia*, are . . . supported by substantial evidence in the record and matters of judicial notice properly considered and applied in the opinion . . . , are made in accordance with proper procedure . . . and are not arbitrary, capricious or an abuse of discretion" (*Koch v Dyson*, 85 AD2d 346, 364 [2d Dept 1982] [internal quotation marks omitted]).  "The task of weighing conflicting evidence . . . is properly left to the . . . Board" (*id.* at 373).

Here, assuming, arguendo, that the Coalition petitioners have standing to challenge the climate effects of the project (*see generally Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774-776 [1991]), we conclude that the Board's determination is supported by substantial evidence and is not arbitrary or capricious.  In support of its application, Alle-Catt introduced evidence regarding the amount of energy to be generated by the project; the proposed transmission facilities and the ability to connect energy generated by the project with New York City, where it is most needed; noise; setbacks; turbine heights and other configurations; and the purported benefits of the project.  The Board also considered the project's impacts with respect to, among other things, carbon emissions; the collision risks to bats and birds, including bald eagles and upland sandpipers; streams, forests, and wetlands; agricultural lands; seismic risks; and planetary climate change.  The Coalition petitioners, and others who opposed the project, submitted evidence regarding, among other things, the local opposition to the project; the project's non-conformity with local land use plans; the purported inability of the New York State electrical grid to ensure the proposed use of the energy generated by the project; and the environmental impact of the project.  The Board reviewed all of those factors in making its determination (*see Application of Alle-Catt Wind Energy LLC*, 2020 WL 3036287, *6-52, 2020 NY PUC LEXIS 653, *11-116).  Here, although the record contains some conflicting evidence "and room for choice exists[,] there is a rational basis for the [Board's] determination" (*Matter of County of Erie v New York State Div. of Human Rights*, 121 AD3d 1564, 1565 [4th Dept 2014] [internal quotation marks omitted]; *see Matter of New York State Div. of Human Rights v Hawk*, 195 AD3d 1395, 1397 [4th Dept 2021]; *see generally 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]).

The Coalition petitioners next contend in proceeding No. 1 that the Board violated the First Amendment rights of a group of Amish residents that would be impacted by the project.  Initially, we note that "[t]he standing of an organization such as [the Coalition] to maintain an action on behalf of its members requires that some or all of the members themselves have standing to sue, for standing which does not otherwise exist cannot be supplied by the mere multiplication of potential plaintiffs.  Additionally, the interests which the organization seeks to protect must be germane to its purposes, the court should be satisfied that the organization is an appropriate one to act as the representative of the group whose rights it is asserting, and neither the relief requested nor the claims asserted must require participation of the individual members" (*Matter of Dental Socy. of State of N.Y. v Carey*, 61 NY2d 330, 333-334 [1984]; *see Matter of Niagara Preserv. Coalition, Inc. v New York Power Auth.*, 121 AD3d 1507, 1509-1510 [4th Dept 2014], *lv denied* 25 NY3d 902 [2015]).  Here, we conclude that the Coalition petitioners seek via that contention to protect rights or interests that are not germane to the Coalition's purpose, and thus they lack standing to raise that contention.  In any event, the Coalition petitioners failed to raise that contention in their "brief on exceptions" to the hearing (16 NYCRR 4.10 [a]), which precluded them from raising that contention in their application for rehearing (*see* 16 NYCRR 4.10 [d] [2]).  Therefore, even assuming, arguendo, that the Coalition petitioners had standing to raise that contention, their failure to raise it in their brief on exceptions "deprive[d] the administrative agency of the opportunity to prepare a record reflective of its expertise and judgment with regard to that issue and, as a result, [the Coalition petitioners have] failed to exhaust [their] administrative remedies with respect to that issue" (*Matter of Hill v Zucker*, 172 AD3d 1895, 1897 [4th Dept 2019] [internal quotation marks omitted]; *see Matter of Yarbough v Franco*, 95 NY2d 342, 347 [2000]).  This Court has "no discretionary authority to review [the Coalition petitioners'] contention" (*Hill*, 172 AD3d at 1897).

For the same reasons, Farmersville's contentions in proceeding No. 2 concerning the Board's alleged violation of the First Amendment rights of Amish citizens are not properly before us.

Contrary to the further contention of Farmersville in proceeding No. 2, the Board did not err in failing to either apply or waive Farmersville Local Law Nos. 1 and 4 of 2020 (Farmersville's 2020 Laws), which were enacted in February 2020.  Article 10 of the Public Service Law mandates, among other things, that the Board consider whether the proposed project "is designed to operate in compliance with applicable state and local laws and regulations," unless the Board determines that compliance with a law is "unreasonably burdensome in view of the existing technology or the needs of or costs to ratepayers" (§ 168 [3] [e]).  Thus, the enabling statute "requires certain specific findings to be made by the Board upon completing its review" of the proposed project, including its "ability to comply with State and local laws" (*TransGas Energy Sys., LLC*, 65 AD3d at 1252).  The applicable local laws must be identified early in the process because they "will be used by parties to determine their positions in

the issues conference and the remainder of the hearing phase of the proceeding" (16 NYCRR 1001.31).  Here, Farmersville's 2020 Laws did not exist during the evidentiary phase of the process, and thus they were not raised at that time; therefore, the Board did not violate Public Service Law § 168 (3) (e) in refusing to consider them (see generally *Matter of Broome County Concerned Residents v New York State Bd. on Elec. Generation Siting & Envt.*, — AD3d —, —, 2021 NY Slip Op 05903, *3-4 [3d Dept 2021]).  Furthermore, the Board did not abuse its discretion in declining to reopen the evidentiary phase of the proceedings based on local laws enacted after that part of the process was complete (see generally *Matter of Incorporated Vil. of E. Williston v Public Serv. Commn. of State of N.Y.*, 153 AD2d 943, 946 [2d Dept 1989]; *Matter of Long Is. Light Co. v Public Serv. Commn. of State of N.Y.*, 134 AD2d 135, 146-147 [3d Dept 1987]).

Finally, the Board did not abuse its discretion in rejecting Farmersville's interpretation of its Local Law No. 3 of 2019 (Farmersville's 2019 Law).  During the proceedings before the Board, Farmersville contended that it interpreted that local law as including all Amish residences within the definition of churches for the purposes of setbacks for wind generation and electrical transmission facilities.  "Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]; see McKinney's Cons Laws of NY, Book 1, Statutes § 94), and the term residence is defined in Farmersville's 2019 Law as "any dwelling suitable for habitation."  Inasmuch as there is no evidence that Farmersville classified the dwellings at issue as churches in any other context, and their primary uses were agricultural and residential, the Board did not err in declining to classify those dwellings as churches (see generally *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg*, 79 NY2d 244, 250 [1992]; *Matter of Yeshiva & Mesivta Toras Chaim v Rose*, 136 AD2d 710, 711 [2d Dept 1988]).

Entered:  November 12, 2021                        Ann Dillon Flynn
                                                    Clerk of the Court